IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SONJA R. PATTERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 99-JEO-2049-S |
| ) | |
| UNIVERSITY OF ALABAMA HEALTH ) | |
| SERVICES FOUNDATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

In this action, plaintiff Sonja R. Patterson (hereinafter "Patterson" or "the plaintiff"), a former employee of defendant University of Alabama Health Services Foundation (hereinafter "the Foundation" or "the defendant"), originally asserted various claims of race discrimination against the defendant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981a. Presently before the court is the defendant's motion for summary judgment as to all the claims. Upon due consideration, the court finds that the motion for summary judgment is due to be granted.

### I.    PROCEDURAL BACKGROUND

The plaintiff initially filed her complaint, alleging various race discrimination claims, including a failure to promote her to the position of Employee Representative, constructive discharge, and other incidents of disparate treatment. (Doc. 1). The defendant filed a motion for summary judgment on November 3, 2000, and submitted evidentiary material in support thereof. (Doc. 17 & 18). The plaintiff filed a memorandum in opposition to the defendant's motion and also submitted evidentiary material in support thereof. (Doc. 20 & 21). In the plaintiff's

response, she asserts that her failure to promote and constructive discharge claims against the defendant were due to survive summary judgment. (Doc. 20, p. 1). Accordingly, only those claims are discussed in detail below.

## II. FACTUAL SUMMARY[1]

The plaintiff is an African-American female who was employed by the defendant for about four years and resigned on August 21, 1998. (Doc. 20, Ex. 1, Patterson Deposition, Volume I (hereinafter "Patterson I"), pp. 19-20).[2] The defendant, a 501(c)(3) organization, operates the Kirklin Clinic in Birmingham, Alabama. The People's Resource Center (hereinafter "PRC") is the defendant's human resources department. One of the PRC's functions is to assist in staffing the more than 1,700 positions at the Kirklin Clinic. Brian DePew, a white male, is the director of the PRC and is ultimately responsible for the functions of the PRC.

The plaintiff was hired as a Human Resources Specialist (hereinafter "HR Specialist") by Paula Preston and Lori Eans[3] on May 1, 1994. (Patterson I at 19-20, 26). The HR Specialist position provides clerical and technical services for the PRC. Initially, the plaintiff reported to both Preston and Eans until Eans was promoted in 1995 and Preston was promoted in 1996. (*Id.* at 22-23).

In April 1995, DePew reorganized the PRC, creating several divisions within the department and naming managers for these new divisions. He promoted Eans to the manager

---

[1] As this matter is before the court on a motion for summary judgment, the facts are construed in a light most favorable to the plaintiff.

[2] Her deposition is also found in the defendant's submission at document 18, Exhibit 1.

[3] Preston and Eans were recruiters and employment representatives of the defendant at the time that they hired the plaintiff. (Patterson at 13, 109).

2

position for the benefits, compensation, and records division. (Patterson I at 22-23). He also promoted Preston to the manager position for the employment division. The Employment Representative position was not thereafter filled while the plaintiff was there. (Patterson I at 111). The plaintiff continued to report to Preston in the employment division until she (Preston) was replaced by Lisa Underwood, the person to whom the plaintiff reported until her departure. (Patterson I at 23-24). Her various duties when she started in 1994 included receiving position request forms (hereinafter "PRF"), recording vacant positions on the log and in the computer database, keeping the database updated, preparing job postings, recoding job positions on the internal job line, making identification badges, preparing orientation lists, arranging for orientation for new employees, copying and sending applications to department heads, sending out COBRA coverage notifications, scheduling drug screens and physical examinations for employees, ensuring that I-9 forms were completed, relieving the switchboard operator, and ordering supplies. (Patterson I at 21, 29- 37; Doc. 21, Ex. 5, (Paula Preston Deposition (hereinafter "Preston")), pp. 28-29).[4]

After the reorganization, the plaintiff and Preston handled the recruitment functions of the PRC, and the plaintiff's job duties increased. The plaintiff continued to perform her prior job duties in addition to performing some of the job duties previously performed by the Employment Representative. She began screening and reviewing applications, interviewing applicants, referring applicants to hiring managers, determining appropriate compensation for positions based on established compensation criteria, communicating job offers, describing benefits offers to newly hired employees, and completing position confirmation forms. (Patterson I at 38-41,

---

[4] Her deposition is also found in the defendant's submission at document 18, Exhibit 4.

3

43, 45-51, 55, 57, 74-78).

Because the plaintiff has assumed significant duties formerly performed by the Employment Representatives, she and Preston, in 1996, requested that her HR Specialist position be reclassified as an Employment Representative position. The plaintiff completed a Position Description Questionnaire ["PDQ"] and Preston reviewed it and made some adjustments. Preston sent the PDQ to Eans. (Patterson I at 90). Preston supported the plaintiff's request for reclassification. (Preston at 49). Eans, in her capacity as the manager for benefits, compensation, and records, referred the plaintiff's reclassification request to UAB's compensation department for review and recommendation.

UAB's compensation department recommended that the plaintiff remain at her current classification as a HR Specialist. On January 31, 1996, Kathleen Wood, a compensation analyst with UAB, sent a letter to Eans setting forth her recommendation that Plaintiff remain a HR Specialist. This letter stated:

> In response to your request to review the classification of the above mentioned employee in the Human Resources Department, the Office of Human Resource Management reviewed the Position Description Questionnaire of this position. Based on this review, our recommendation is to retain the current classification.
>
> The request involved the classification of Sonja Hardy.[5] Information gathered from the PDQ revealed that this position is responsible for providing support for the employment process.
>
> While this position demands a highly capable individual, the overall performance in the position is based on a support staff role and is not out of line for the HR Specialist classification.
>
> I would like to stress that one duty that Sonja is performing is more in line with that of an Employment Rep[resentative] and is considered an exempt level duty

---

[5] The plaintiff remarried in 1997 and changed her name to Sonja Patterson.

4

> (conduct interviews). This function, at the level of an Employment Rep[resentative], requires an individual with a college degree. I would like to suggest that in the near future you may want to wean her from doing this.

(Doc. 21, Ex. 2 at Def. Ex. 16).

Based on this recommendation, DePew decided not to reclassify the plaintiff; Preston told her that the defendant had denied her reclassification request. The plaintiff testified that Preston told her that she was not reclassified because she did not have the college degree. (Patterson at 91-92). However, the plaintiff saw the letter from Woods to Eans, stating that her job duties did not support reclassification, in August 1996. Although not reclassified, the plaintiff received a 10% raise, in July 1996, in recognition for her additional duties. She also continued screening applications, conducting interviews and relaying offers. (Patterson at 103-05; Preston at 53-54).

Preston left the defendant's employment in August 1996. Lisa Underwood, a white female, eventually replaced Preston as the manager of the employment division. However, there was a time gap of approximately six weeks between Preston's departure and Underwood's arrival, during which the plaintiff and Jeanie Thomas, a white female, performed some of the functions of the Manager of Employment. (Doc. 21, Ex. 3 (Brian DePew Deposition (hereinafter "DePew")) at 117-18). Thomas was the manager of the employee relations division. Also, during this interval, the plaintiff conducted interviews, interacted with department managers, made job offers, met with Thomas and compensation personnel regarding compensation issues, and drafted reports to track job vacancies, in addition to performing her regular job duties. (DePew at 117-20).

The plaintiff testified that, after Underwood's arrival, she continued to perform the same functions that she was performing prior to Preston's departure. (Patterson at 103-05). According

to Underwood, at the time of her arrival the plaintiff was performing the following duties: the job line, copying applications to send to department managers, filing applications, completing criminal and other background checks, verifying education, scheduling physicals and drug screens, screening applications, making offers, making identification badges, administering typing and pharmacology tests, sending paperwork regarding new hires to the compensation department, and maintaining orientation list. According to Underwood, the plaintiff performed some recruitment duties when Underwood started. There is no evidence that the plaintiff ever mentioned to Underwood that she wanted to be promoted to the Employment Representative position or that Underwood discussed the Employment Representative position with her.

In June 1998, Underwood asked DePew to approve reinstating the Employment Representative position to her department, due to the heavy workload. (Doc. 21, Ex. 4 (Lisa Underwood Deposition (hereinafter "Underwood")) at 98-102). DePew denied Underwood's request. (*Id.*). However, Underwood testified that she believed DePew might reconsider her request for the next fiscal year beginning in October. (*Id.*).

At the time Underwood requested additional staff, DePew did not mention to her that the plaintiff was interested in being promoted or that she had sought reclassification in 1996. (DePew at 197). DePew did not mention the Employment Representative position to the plaintiff at any time prior to her resignation, although he admitted that he knew the plaintiff was interested in being promoted. Neither DePew nor Underwood never considered the plaintiff for the Employment Representative position.

On August 7, 1998, the plaintiff resigned. She sent the following letter to Underwood:

> This is to tender by resignation from UAHSF, as Human Resource Specialist, effective August 21, 1998.

6

> I recently have been offered the opportunity to work with Baptist Health Systems as a Benefits Administrator. This is an opportunity to advance professionally and increase my knowledge of benefits.
>
> I have enjoyed working for UAHSF. More importantly, I have appreciated working with you. You have become a good friend as well as a respected boss.
>
> . . .
>
> Again, my thanks for your personal and professional support during my years at Health Services.

(Doc. 21, Ex. 1 at Ex. 12). Her resignation was effective August 21, 1998. (*Id.*).

After the plaintiff resigned, Underwood and DePew determined that the department would be reconfigured. Another PRC employee, Amber Conder, would be assigned to the plaintiff's now-vacant HR Specialist position and Conder's former position would be eliminated. The elimination of this position would fund, in part, the reinstatement of an Employment Representative position in the employment division.

Underwood testified that, for over a year, she had discussed her desire for an Employment Representative with Virginia Eichhorn. (Underwood at 111). Eichhorn, a white female, was a clinic manager during this time and not part of the PRC staff. Underwood also discussed the position with other clinic managers; however, she did not discuss the Employment Representative position with the plaintiff.

Underwood testified that she believed that the employment division was not meeting the needs of Kirklin Clinic managers. Underwood and DePew believed that hiring someone with knowledge of clinic positions and a good rapport with clinic managers would address this problem. Therefore, the minimum qualifications on Position Request Form for the reinstated Employment Representative were modified to list "five years health care [management]

7

experience" as an alternative to a B.S. degree. (DePew, Ex. 11).

The defendant's promotion and transfer policy in effect at the time Eichhorn transferred states, "To initiate [a request for transfer] associates should notify the Employment Office, complete an application for a specific vacancy and file with [PRC]." (DePew, Ex. 15). Eichhorn completed a request for transfer application on August 24, 1998, because she knew there was soon to be an opening in PRC. Eichhorn had 18 years of experience with the defendant and UAB; for approximately 16 years, she had served as the clinic manager for the surgery department. She had hiring experience and a low turnover rate, which the defendant contends demonstrates that she was good at finding the right person for the position. Eichhorn's application did not indicate a specific position for which she was applying. Also it did not indicate that she had a college degree and it did not list her specific duties and responsibilities as a clinic manager. Eichhorn resigned as clinic coordinator two days later, on August 26, 1998, and stated that she was transferring to the Human Resources Department.

Underwood admitted that she had told Eichhorn that there would be a vacant position, and that she had hoped that Eichhorn would apply. On August 25, 1998, Underwood had Amber Conder, a receptionist, post the Employment Representative position on the job line. The Employment Representative position was on the job line for two to three days. No one other than Eichhorn applied for the position.

The first step in filling a vacant position is the completion of a PRF (Position Request Form) by the department manager. After the PRF is received by PRC, the employment division logs the position in the database and places it on the job line. The PRF goes to the compensation department for approval and for a position number. After that, the position is ready to be filled.

8

Application for positions are received by PRC after the position is posted; the applications are screened and some are sent to the hiring manager for review. Thereafter, some applicants are interviewed by the hiring managers and/or PRC. If an applicant is accepted, her references are checked, salary is discussed and an offer of employment is made.

The PRF for the Employment Representative position was approved by compensation on August 26, 1998 -- two days after Eichhorn submitted her application, one day after the position was posted on the job line, and the same day Eichhorn submitted her letter of resignation to Kirklin Clinic.

## III. DISCUSSION

The plaintiff alleges that the defendant failed to promote her to Employment Representative and that she was constructively discharged from her HR Specialist position. The defendant contends that its motion for summary judgment is due to be granted as to the plaintiff's promotion claim because she cannot show that she applied for the Employment Representative position and, thus, she cannot establish a *prima facie* case of discrimination. Also, the defendant contends that its motion for summary judgment is due to be granted as to the plaintiff's constructive discharge claim because she cannot show that her working conditions were intolerable and, thus, her constructive discharge claim must fail. For the reasons set forth below, the court finds that the defendant's motion for summary judgment is due to be granted.

### A. Promotion Claim

The plaintiff must establish four elements of a *prima facie* case for a failure to promote claim: (1) the plaintiff is a member of a protected class; (2) she was qualified for and applied for the available position; (3) she was rejected despite his qualifications; and (4) the defendant filled

9

the position with a person outside the protected class or continued to seek other applicants after rejecting Plaintiff. *Walker v. Mortham*, 158 F.3d 1177, 1192 (11th Cir. 1998), *cert. denied*, 528 U.S. 809, 120 S. Ct. 39, 145 L. Ed. 2d 36 (1999). The defendant contends that the plaintiff cannot prove that she applied for the position or that she was excused from applying for the position of Employment Representative in August 1998.

The evidence is undisputed that the defendant posted the Employment Representative position in August 1998, *albeit*, for a short period. Moreover, it is undisputed that the plaintiff did not apply for the posted Employment Representative position and that she already had resigned at the time the position was posted. Nevertheless, the plaintiff contends that she satisfies the application prong of the *prima facie* case because she applied for the position in 1996 when she requested that her position be reclassified. She also contends that the defendant "intentionally withheld information from [her] about the Employment Representative vacancy because the defendant did not want to award the position to [her] based on her race." (Doc. 20, p. 16).

The plaintiff contends that she "applied" for the Employment Representative position when, in 1996, she requested that her position be reclassified. This argument is without merit. The record is undisputed that there was no vacant Employment Representative position at the time the plaintiff asked the defendant to reclassify her position. Moreover, any claim that the defendant discriminatorily refused to reclassify the plaintiff in 1996 is time barred.

The plaintiff argues that her expressed desire to be reclassified in 1996 put the defendant on notice that she wished to be considered for promotion in 1998 and that, therefore, she did not have to reapply for the position in 1998. Given the formal nature of the defendant's selection

procedures and the fact that the position was posted in August 1998, the court finds that the plaintiff's attempt to be reclassified in 1996 is not sufficient to constitute an application for the posted Employment Representative position in 1998. The *McDonnell Douglas prima facie* case requires that the plaintiff establish that she applied for an advertised, available position. However, under certain circumstances, the failure to apply may be excused:

> [N]onapplicants may be entitled to relief where the employer's clear policy of exclusion would make an application a useless exercise. Such a claim requires two distinct determinations: [(1)] that the nonapplicant would have applied but for discrimination and [(2)] that he would have been discriminatorily rejected had he applied.
>
> Where no policy of exclusion is actually in place, but the employer continues to hire by word of mouth or other informal methods, a nonapplicant may still recover. . . . [W]e [have] held that when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested as well as those who have learned of the job opening and expressed an interest. Accordingly, a plaintiff makes out a *prima facie* case -- that is, he creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection -- as long as he establishes that the company had some reason or duty to consider him for the post.

*Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 (11th Cir.) (internal citations and quotations omitted), *cert. denied*, 479 U.S. 883, 107 S. Ct. 274, 93 L. Ed. 2d 250 (1986).

Therefore, a plaintiff alleging discrimination with regard to promotions or hiring must demonstrate that he or she applied for a position unless he or she demonstrates that such application was futile, *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 367-68 n.52, 97 S. Ct. 1843, 1870-71 n.52, 52 L. Ed. 2d 396 (1977), or that the employer uses informal means to select employees for available positions, *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984). If the employer does not post the positions, it has a

duty to consider everyone who might be interested in the position. *Hanley v. Sports Authority*, 143 F. Supp. 2d 1351, 1358 (S.D. Fla. 2000).

The court has found no case in which a plaintiff has been excused from filing an application for a formally posted position without a showing of futility. The court cannot find and the plaintiff offers no support for the proposition that she only needed to express an interest at some time -- remote or recent -- in a vacant position that the defendant posted and/or otherwise advertised in order to satisfy the "application" prong of the *prima facie* case. *Harris v. Warehouse Services, Inc.*, 77 F. Supp. 2d 1240, 1245-47 (M.D. Ala. 1999) (citing *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997)). Indeed, the court finds that, in order to establish that she was discriminatorily denied a promotion to a position that was formally posted, the plaintiff must prove that she has applied or showed specific interest in the position, or that application for such position was futile. *See Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 n.2 (2nd Cir. 1998) (citing *Paxton v. Union National Bank*, 688 F.2d 552, 568 (8th Cir. 1982); *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 349 (3rd Cir. 1990); *Holsey v. Armour & Co.*, 743 F.2d 199, 208-09 (4th Cir. 1984)); *see also Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 533 (11th Cir. 1992) (the plaintiff "creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection--as long as he establishes that the company had some reason or duty to consider him for the post"), *cert. denied*, 508 U.S. 961, 113 S. Ct. 2932, 124 L. Ed. 2d 682 (1993).

The court finds that the plaintiff did not apply for this posted position and that she has not demonstrated evidence that she was excused from applying due to futility or any other reason.

The fact that the defendant considered and rejected reinstating the Employment Representative position in about June 1998 does not demonstrate that there was a position available before she left. To the contrary, the testimony demonstrates that the decision to add the position was not approved until after Patterson submitted her resignation. (DePew at 198-99; Underwood at 102). This does not excuse her failure to at least apply for the job. Thus, the plaintiff has not demonstrated a *prima facie* case of discrimination with regard to the 1998 Employment Representative position.[6] The defendant's motion for summary judgment is, therefore, due to be granted.[7]

### B. Constructive Discharge

The plaintiff contends that she was constructively discharged. She complains that her working conditions were intolerable because she "found it humiliating that she was forced to

---

[6] The plaintiff's reliance on *Jones*, 977 F.2d 527, *Carmichael*, 738 F.2d 1126, and *White v. Wells Fargo*, 908 F. Supp 1570 (M.D. Ala. 1995), is misplaced. In *Jones*, the Eleventh Circuit Court of Appeals reversed the district court's decision to grant summary judgment, finding that the record was not clear regarding the vacancy. In the present matter, the facts are clear–the plaintiff did not apply for the position and it was not available until after she had resigned. In *Carmichael*, the record again was not clear, in fact, the plaintiff "allege[d] that the defendant told him that there were no vacancies and eventually hired him only on a part-time basis because blacks were not hired for sales positions. The evidence show[ed] that a white was hired for a City Sales job the same month that the plaintiff was hired as a janitor, and another white was hired for City Sales the next month." *Id.*, 738 F.2d at 1132. Thus, *Carmichael* is factually inapposite to the present case. In *White*, there was conflicting evidence whether the defendant had been informed that the plaintiff had accepted another position before the position in question was filled. *Id.*, 908 F. Supp. at 1576. Additionally, the court stated that "since Wells Fargo has failed to present any evidence that it required a formal application for the promotion at issue, the court finds that Ms. White does not have to prove that she expressed an interest in the promotion." *Id.*, 908 F. Supp. at 1582. The facts in the present case again are distinguishable. None of these cases support the proposition that the defendant had the legal obligation to consider the plaintiff for the Employment Representative position, which was formally posted, after she resigned to accept employment elsewhere.

[7] The plaintiff's argument that the defendant did not follow its internal policies and usual practice regarding the selection of Eichhorn is not persuasive under the present circumstances. (*See* Doc. 20, pp. 27-28). She notes that Eichhorn's transfer application did not state the specific position she was applying for as is required by the defendant's transfer policy and that Eichhorn's application was submitted before the position was approved. (*Id.*). Although the court is not impressed with the manner in which the defendant selected Eichhorn, that is not sufficient in this case to establish the *prima facie* case because, as already discussed, the plaintiff's resignation is what triggered the opening and she did not apply for the position.

13

perform the duties of an Employment Representative on a daily basis, but her position was not reclassified for approximately three years." (Doc. 20, p. 30). She also contends that she was constructively discharged "because the defendant imposed a college degree requirement on Patterson. Patterson knew it would be impossible to progress in that department without a degree." *Id.*

"The threshold for establishing constructive discharge in violation of [Title VII] is quite high." *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001). "To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in [his] position would have been compelled to resign." *Id.* (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)(quoting *Thomas v. Dillard Department Stores, Inc.*, 116 F.3d 1432, 1433-34 (11th Cir. 1997))) (internal quotations omitted); *see also Wardwell v. School Board of Palm Beach County*, 786 F.2d 1554, 1557 (11th Cir. 1986). "Before finding a constructive discharge, this court traditionally require[s] a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable.'" *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991) (citing *Wardwell*, 786 F.2d at 1558 (holding that an employer's failure to promote and consequent embarrassment to employee, together with employee's added workload, "simply do not rise to the intolerable level at which a reasonable person would feel compelled to resign")).

The facts of this case -- that the plaintiff was not promoted or reclassified and she assumed she would not be promoted or reclassified because she did not have a college degree -- are not sufficient to support a claim for constructive discharge. *See West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995) ("[F]rustration and embarrassment at not being promoted

14

do not make work conditions sufficiently intolerable to constitute constructive discharge." (citing *Maney v. Brinkley Mun. Waterworks & Sewer Dept.*, 802 F.2d 1073, 1075-76 (8th Cir. 1986); *Jett v. Dallas Ind. School Dist.*, 798 F.2d 748, 755 (5th Cir. 1986), *remanded in part on other grounds*, 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); *Wardwell* 786 F.2d at 1558); *Shealy v. City of Albany, Ga.*, 137 F. Supp. 2d 1359, 1368-69 (M.D. Ga. 2001); *see also Boze v. Branstetter*, 912 F.2d 801, 805-06 (5th Cir. 1990)("A failure to promote does not in and of itself suffice to result in a constructive discharge." (citing, *inter alia*, *EEOC v. Federal Reserve Bank*, 698 F.2d 633, 672 (4th Cir. 1983), *rev'd on other grounds, sub nom., Cooper v. Federal Reserve Bank*, 467 U.S. 867, 104 S. Ct. 2794, 81 L. Ed. 2d 718 (1984); 3 A. Larson & L. Larson, EMPLOYMENT DISCRIMINATION § 86.50, at 17-62 (1989)("Claims of constructive discharge have generally not succeeded in cases where they are based on . . . denial of promotion . . . .")). These incidents are not sufficient to demonstrate that the plaintiff's working conditions were so intolerable that a reasonable person would have felt compelled to resign.

Based on its review of the record, the court finds no disputed issues of material fact and that the defendant is entitled to judgment as a matter of law as to the plaintiff's constructive discharge claim.

### IV. CONCLUSION

Based on the foregoing, the court finds that the defendant's motion for summary judgment (doc. 17) is due to be granted. The court finds no disputed issues of material fact and that the defendant is entitled to judgment as a matter of law. The plaintiff's claims are due to be dismissed with prejudice. An appropriate order will be entered.

**DONE**, this 19th day of November, 2001.

JOHN E. OTT
United States Magistrate Judge